J. A32039/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES ANTON ARTIS-BRYAN, | : | |
| | : | |
| Appellant | : | No. 209 EDA 2014 |

Appeal from the Judgment of Sentence December 17, 2013
In the Court of Common Pleas of Monroe County
Criminal Division No(s).: CP-45-CR-0001225-2012

BEFORE: PANELLA, OLSON, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED APRIL 24, 2015**

Appellant, James Anton Artis-Bryan, appeals from the judgment of

sentence[1] entered in the Monroe County Court of Common Pleas following a

jury trial and convictions for criminal accomplice to possess heroin,[2] criminal

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant purports to appeal from the orders entered on August 13, 2013, September 20, 2013, and January 6, 2013. The August 13th order granted in part and denied in part Appellant's Omnibus Pretrial Motion to Suppress. **See** Order, 8/13/13. On September 20, 2013, the jury returned its verdict. On January 6, 2014, the court, following consideration of Appellant's Motion for Reconsideration of Sentence, entered an order modifying his judgment of sentence.

[2] 18 Pa.C.S. § 306(b)(1).

accomplice to possess cocaine,[3] possession of heroin,[4] possession of cocaine,[5] possession of drug paraphernalia,[6] false identification to law enforcement officer,[7] and exceeding posted speed limit.[8]  Appellant contends the trial court erred in (1) finding police had reasonable suspicion to stop either of two vehicles for speeding, (2) sending out with the jury certain letters written by Appellant, and (3) sentencing Appellant to a state correctional facility.  We affirm.

We adopt the facts as set forth in the trial court's opinion denying Appellant's omnibus pre-trial motion seeking suppression of evidence and the dismissal of charges against him.  *See* Trial Ct. Op., 8/13/13, at 1-4. The trial court summarized the procedural posture of this case as follows:

> [Appellant] was sentenced on December 17, 2014 to 44 to 96 months in a state correctional institution.  His RRRI minimum sentence was calculated to be 36 months and 20 days.
>
> [Appellant] filed a post-sentence motion seeking reconsideration of sentence.  On January 6, 2014, his sentence was reconsidered and modified.  His new sentence was for a total of not less than 38 months nor for

---

[3] 18 Pa.C.S. § 306(b)(1).

[4] 35 P.S. § 780-113(a)(16).

[5] 35 P.S. § 780-113(a)(16).

[6] 35 P.S. § 780-113(a)(32).

[7] 18 Pa.C.S. § 4914(a).

[8] 75 Pa.C.S. § 3362(a)(2).

more than 84 months. His RRRI alternative minimum sentence was calculated to be 31 months and 20 days.

Trial Ct. Op., 3/19/14, at 1. This timely appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal[9] and the trial court filed a responsive opinion.

Appellant raises the following issues for our review:

A. Did the Pennsylvania state police have appropriate reasonable suspicion to make a traffic stop on either of two vehicles for speeding where the trooper used one radar device to clock both vehicles at the same time in violation of the laws of science?[10]

---

[9] The trial court entered an order on January 27, 2014, directing Appellant to file and serve his Pa.R.A.P. 1925(b) statement "no later than February 18, 2014." Order, 1/27/14. Appellant filed his Rule 1925(b) statement on February 21, 2014. We need not find the late filing results in waiver. In **Commonwealth v. Veon**, 109 A.3d 754 (Pa. Super. 2015), this Court held:

First, the trial court maintains that [the appellant] has waived all of his issues on appeal by failing to file a timely statement of matters complained of on appeal pursuant to Rule 1925(b) of our Rules of Appellate Procedure. **Waiver is no longer the remedy under such situations**. Where the trial court does not address the issues raised in an untimely 1925(b) statement, we remand to allow the trial court an opportunity to do so. On the other hand, where, as here, the trial court has addressed the issues raised in an untimely Rule 1925(b) statement, we need not remand and may address the issues on their merits.

**Id.** at 762 (citations omitted and emphasis added).

[10] We note that in his Pa.R.A.P. 1925(b) statement of errors complained of on appeal, Appellant raised the issue as follows: "That the trial court erred and abused its discretion by not suppressing the traffic stop of the Appellant's vehicle, as well as another vehicle, for speeding where the Trooper used one radar device to clock both vehicle [sic] at the same time in

B. Did the trial court err and abuse its discretion by sending out with the jury letters which were allegedly written to a co-defendant by the Appellant where such could be seen as a [sic] being a confession of the crimes alleged against him?

C. Did the trial court err and abuse its discretion by sentencing the Appellant to a state correctional facility where the highest graded offense for which he was convicted was a misdemeanor of the third degree and no appropriate approval had been received from the secretary of the department of corrections for such sentence?

Appellant's Brief at 7.

First, Appellant argues the trial court erred in not suppressing the traffic stop of his vehicle because the radar device used by Trooper Nicholas Cortes was not capable of determining the speeds of two motor vehicles at the same time. Trooper Cortes stopped Appellant based upon the radar gun reading and the fact that he was tailgating a vehicle driven by Zarinah Muhammad. Appellant avers that the testimony of his expert witness, Neil Shirk, established

that it was impossible for Trooper Cortes to have clocked the two vehicles at one time in the fashion he suggested that he had. Effectively, if the cars were as close together as Cortes suggests they were, and were traveling one behind the other, as he also indicated, it would be impossible to differentiate which vehicle the signal returned from, or if it was a confused reflection from both. In other words, the radar signal could bounce back from the first vehicle only or be confused between bounces off the two, but there would be no way for the device to

_____

violation of the laws of science." Appellant's Concise Statement of Matters Complained of on Appeal, 2/21/14, at 1.

differentiate between the two and provide an accurate speed for each.

*Id.* at 14.

Appellant argues that because "Cortes cannot reasonably say which vehicle was speeding or offer any scientifically valid indication that both were" there was no basis for a traffic stop pursuant to 75 Pa.C.S. § 6308.[11] *Id.* at 12, 14.[12]  We hold Appellant is due no relief.

---

[11] Section 6308 provides:

> **(b) Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).  We note that the reference to 75 Pa.C.S. § 6308(a)-(b) is the only citation to legal authority offered in support of this issue.

[12] We note Appellant summarily avers as follows:

> In that the alleged illegal substances were found in the vehicle Muhammad was driving, the lack of legal cause to pull over her vehicle is fatal to her being stopped and therefore any evidence found in her vehicle must be suppressed as the fruit of an illegal search.  Without the evidence from her car, there are no illegal substances in this case and the charges against Appellant should have been dismissed for lack of evidence.
>
> Anticipating an argument that Appellant lacks standing to challenge the stop of the Muhammad vehicle, Appellant

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Where the prosecution prevailed in the suppression court, we may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*In re J.E.*, 937 A.2d 421, 425 (Pa. 2007) (citations omitted).

In evaluating the legal conclusion drawn by the suppression court, this

Court may also consider uncontradicted testimony from the suppression

---

contends that he was given such standing by the actions of the Commonwealth in this matter. The Commonwealth pulled over two vehicles travelling close together using one radar gun. . . .

Appellant's Brief at 14-15.

. . . Rule 2119(a) of the Rules of Appellate Procedure requires a properly developed argument for each question presented. This requires, among other things, a discussion of and citation to authorities in the appellate brief and "the principle for which they are cited." *See* Pa.R.A.P. 2119(a), (b). Failure to conform to the Rules of Appellate Procedure results in waiver of the underlying issue. *See Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1262 (Pa. Super. 2014) (*en banc*).

*Veon*, 109 A.3d at 774. Instantly, Appellant's argument is devoid of any discussion of and citation to legal authority. Therefore, this issue is waived. *See id.*

hearing not included in the suppression court's findings of fact.[13]

***Commonwealth v. Mendenhall***, 715 A.2d 1117, 1119 n.1 (Pa. 1998). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Clemens***, 66 A.3d 373, 378 (Pa. Super. 2013) (citation omitted).

Instantly, the trial court opined:

> I made findings of fact following the suppression hearing that:
>
> 1[2[14]] The Dodge Caravan driven by Zarinah Muhammad and the Impala driven by [Appellant] came through the radar and were determined by the trooper to be speeding. The Dodge Caravan came through the radar zone at 70 and the Chevy Impala was also clocked at 70 miles per hour in a 55 mile per hour zone.
>
> \* \* \*
>
> [Appellant] was convicted of speeding, based upon the testimony of the arresting troopers and their use of radar. [Appellant] called an expert, Neil Shirk, during the suppression hearing who gave testimony about the unreliability of the use of radar where two vehicles pass

---

[13] We acknowledge the holding of ***In re L.J.***, 79 A.3d 1073 (Pa. 2013), that after October 30, 2013, the scope of review for a suppression issue is limited to the record available to the suppression court. ***Id.*** at 1085, 1089 (stating holding applies to "all litigation commenced Commonwealth-wide after the filing of this decision"). Because the instant omnibus pre-trial motion was filed prior to October 30, 2013, ***In re L.J.*** does not apply.

[14] We note the trial court denominates this as finding of fact number 17, however, it was finding of fact number 12. ***See*** Trial Ct. Op., 8/13/13, at 2-3.

the radar operator at approximately the same time. Mr. Shirk testified that the radar signal would reflect from the first car, but would not show both cars where they were traveling in the same lane, close to one another. However, Trooper Cortes testified on rebuttal that Mr. Shirk was describing a different kind of radar unit. Cortes' unit gave a separate visual and an audible signal for each car as they passed through the radar, both registering 70 miles per hour. **I found Trooper Cortes' testimony to be more credible than the defense expert testimony**.

Trial Ct. Op., 3/19/14, at 2 (citations omitted and emphasis added).

At the suppression hearing, Trooper Cortes testified he was operating a Genesis handheld radar unit. N.T., 4/15/13, at 6. He was shown a radar unit certificate of accuracy which indicated when it was calibrated. *Id.* at 6-7. "It was calibrated January 9th, 2012 by Decatur, manufactured by Decatur Electronics, certified by Simco Electronics, testing station R9." *Id.* at 7. The Commonwealth asked the court to take judicial notice of the fact that the "speed timing device and testing station was approved by the Pennsylvania Bulletin, Volume 41 dated Saturday, December 31st, 2011." *Id.* The certification document was admitted into evidence without objection. *Id.* at 16.

Appellant's expert, Mr. Shirk, testified that he had experience with "a lot of military type radar systems, ground radar systems as well as shipboard and also aircraft and missile type radars, devices and systems to be built, tested and delivered." *Id.* at 38. He had seen a Genesis handheld radar unit operated at a demonstration. *Id.* at 40. He did not operate it. *Id.* He never attended a Pennsylvania State Police academy training

regarding Genesis handheld radars. *Id.* at 40-41. The radar system is "reliable. It's used pretty extensively throughout many police departments." *Id.* at 42. He opined that there was "no way you can clock both cars." *Id.* at 45. He was asked how a trooper operates the radar. *Id.*

> Well, he has a few different buttons on the radar, and it depends on which one it is. I know there's a fast—there's a button, a fast button. I'm not sure if his had it, but there was one—one of these models has a fast button, which, what it does is you can switch to a faster mode. So if you have a Mustang passing a trailer truck, you can hit the faster mode, but you're only going to see the trailer truck, which is the biggest signal, but if you want the fastest object of the second strongest signal, you hit the fastest mode, and that will switch you over to get the Mustang passing the trailer truck. I'm not sure he had that on the handheld device, but that is in the same product line of these folks.

*Id.* at 45-46.

Trooper Cortes testified on rebuttal that his radar gun was not equipped with a fast button. *Id.* at 68. He testified as follows regarding the operation of the Genesis handheld radar unit that he used:

> [The Commonwealth]: How do you operate the type of device that you have?
>
> A: Squeeze the trigger. You squeeze the trigger and point it at a vehicle.
>
> Q: What is the indication for you when a vehicle is coming through your zone of influence at a high rate of speed?
>
> A: You get a reading on the screen and a high-pitched tone. For every vehicle that comes in, it will squeal in other words. You have the visual, and you get an audible signal.

Q: In this instance, how many audible signals did you get?

A: The Dodge Caravan came through at 70. It beeped. Immediately behind it was the Chevy Impala. The reading was 70, and it beeped again. So it was two separate high-pitched tones.

***Id.*** Trooper Cortes testified he was a trooper for eleven years and had pulled over thousands and thousands of vehicles using radar in similar situations as in the case at bar. ***Id.*** at 70-71.

Appellant is asking this Court to reweigh the evidence. This we cannot do. ***See Clemens***, 66 A.3d at 378. Instantly, the record supports the factual findings of the suppression court. ***See In re J.E.***, 937 A.2d at 425. We discern no abuse of discretion. ***See id.***

Next, Appellant contends the trial court erred and abused its discretion by sending out with the jury letters alleged to have been written by Appellant to Muhammad, his co-defendant, which could be interpreted as being a confession of the crimes charged. Appellant's Brief at 17.

As a prefatory matter, we consider whether Appellant has waived this issue on appeal. Instantly, the notes of testimony from the jury trial held on September 19, 2013, and September 20, 2013 are not in the certified record on appeal. The trial court noted:

The Notice of Appeal, filed on January 22, 2014, contained no request for a transcript. ***See*** Pa.R.A.P. 904(c)[15] and

---

[15] Pennsylvania Rules of Appellate Procedure 904 provides:

- 10 -

1911;[16] Pa.R.J.A. 5000.5.[17] The court issued an order *sua sponte* on February 18, 2014 directing the court reporter to transcribe the notes of testimony at issue based upon [Appellant's] statement in the Notice of Appeal[18] itself. [Appellant] was directed to deposit $240

**(c) Request for transcript.**—The request for transcript contemplated by Rule 1911 ( request for transcript) or a statement signed by counsel that there is either no verbatim record of the proceedings or the complete transcript has been lodged of record, shall accompany the notice of appeal, but the absence of or defect in the request for transcript shall not affect the validity of the appeal.

Pa.R.A.P. 904(c).

[16] Pennsylvania Rule of Appellate Procedure 1911 provides:

**(a) General rule.** The appellant shall request any transcript required under this chapter in the manner and make any necessary payment or deposit therefor in the amount and within the time prescribed by Rules 5000.1 *et seq.* of the Pennsylvania Rules of Judicial Administration (court reporters).

Pa.R.A.P. 1911(a).

[17] Pennsylvania Rule of Judicial Administration 5000.5 provides: "(b) For an appeal, the transcript request shall be made part of the notice of appeal." Pa.R.J.A. 5000.5(b).

[18] The notice of appeal stated as follows:

Notice is hereby given that [Appellant] hereby appeals to the Superior Court of Pennsylvania from the Sentencing Orders dated the 6th day of January, 2014 and the 17th December, 2013, the trial Order of the 20th day September, 2013 and the pretrial Order of the 13th day of August, 2013, together with the trial and pretrial motions relating to the same. These Orders have been entered in the docket as evidenced by the attached copy of the docket entries.

within ten days as a condition precedent to the court reporter' commencement of transcription. The court reporter advises that no deposit was made. She therefore did not transcribe the notes of testimony.

Trial Ct. Op., 3/19/14, at 3 n.1.

This Court has stated:

[W]ell-settled Pennsylvania law makes clear "an appellate court is limited to considering only the materials in the certified record when resolving an issue." *Commonwealth v. Preston*, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*), [ ]. Where the appellant has not made the transcript of the proceedings at issue a part of the certified record, we have said:

With regard to missing transcripts, the Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary to permit resolution of the issues raised on appeal. Pa.R.A.P. 1911(a). . . . When the appellant . . . fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review.

*Id.* at 7.

*Commonwealth v. Houck*, 102 A.3d 443, 456 (Pa. Super. 2014).

Instantly, the trial court opined:

The second issue raised by [Appellant] on appeal is that the court erred in sending letters out with the jury which were "allegedly written to a co-defendant by the Appellant where such could be considered as a confession of wrongdoing." [Appellant] has not ordered the trial transcript so it is impossible to determine the merits of the claimed error and whether an appropriate defense objection was made at the time.

---

Notice of Appeal, 1/22/14.

Trial Ct. Op., 3/19/14, at 2-3. Appellant's claim cannot be resolved in the absence of the trial transcript, therefore it is waived.[19] ***See Houck***, 102 A.3d at 456.

Lastly, Appellant contends the trial court erred in sentencing him to a state correctional facility where the highest graded offense for which he was convicted was a misdemeanor of the third degree and no appropriate approval had been received from the secretary of the department of corrections for the sentence. Appellant's Brief at 17. Appellant avers such approval is required pursuant to 42 Pa.C.S. § 9762(i).[20] ***Id.*** at 18.

---

[19] We remind counsel, "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." ***Commonwealth v. B.D.G.***, 959 A.2d 362, 372 (Pa. Super. 2008) (citations omitted).

[20] The statute provides in pertinent part:

> **(i) Prohibition.**—Notwithstanding any other provision of law, no person sentenced to total or partial confinement after the effective date of this subsection [August 6, 2012] shall be committed to the Department of Corrections unless:
>
> > (1) the aggregate sentence consists of a conviction for an offense graded as a misdemeanor of the second degree or higher; or
> >
> > (2) the Secretary of Corrections or the secretary's designee has consented to the commitment.

42 Pa.C.S. § 9762(i). The effective date of this subsection was August 6, 2012.

The notes of testimony from the reconsideration of sentence hearing are not in the certified record on appeal.[21] In the absence of the transcript, this issue is waived. **See Houck**, 102 A.3d at 456.

Judgment of sentence affirmed.

Judge Panella joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/24/2015

---

[21] We note that the trial court stated the following in its January 6, 2014 order imposing sentence: "The District Attorney's office has checked with the Department of Corrections and has obtained correspondence that the Department of Corrections has consented to [Appellant] serving this sentence in a state correctional institution pursuant to 42 Pa.C.S. § 9762(i)." Order, 1/6/14, at 2-3.

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA : No. 1225 CR 2012
                : 
        vs.                    : 
                :
JAMES ANTON ARTIS-BRYAN,       :
                :
     Defendant             :

## OPINION

Defendant James Artis-Bryan filed an omnibus pre-trial motion on December 18, 2012, seeking suppression of evidence and dismissal of the charges against him. A hearing was scheduled for January 25, 2013. The hearing was rescheduled to February 25, 2013 on the Commonwealth's motion. Testimony was taken that day, but the defendant requested a continuance and the matter was again rescheduled to March 25, 2013. The defendant failed to appear for the March 25, 2013 hearing and it was rescheduled to April 15, 2013. Testimony was concluded on that date and the parties requested the notes of testimony and the opportunity to file briefs.

## FINDINGS OF FACT

1. Zarinah Muhammad became romantically involved with Defendant James Artis-Bryan in April, 2012.

2. On May 12, 2012, she and Mr. Artis-Bryan left Wilkes-Barre, Pennsylvania in a Chevrolet Impala driven by Mr. Artis-Bryan. She was going to New Jersey for Mother's Day, and she believed that Mr. Artis-Bryan was going there because he had business to attend to.



1

9

3. They went shopping when they arrived and stayed in a hotel in Belleville, New Jersey.

4. That night, Mr. Artis-Bryan went out at approximately 10:00 p.m., leaving Ms. Muhammad alone in the hotel room. He returned sometime during the night while she was sleeping. NT 9.

5. When Ms. Muhammad woke in the morning, Mr. Artis-Bryan had parked a Dodge Caravan outside the hotel. The Chevrolet Impala in which they had travelled to New Jersey was also there. NT 10. Ms. Muhammad had seen the Dodge Caravan before when the defendant was driving it in Wilkes-Barre on a couple of occasions. NT 19.

6. Ms. Muhammad saw the defendant put shopping bags inside the van when they were leaving the hotel. NT 20.

7. That same morning, on May 13, 2012, Ms. Muhammad visited her mother, using the van.

8. Mr. Artis-Bryan used the Chevrolet Impala to attend to business he had elsewhere.

9. Ms. Muhammad and Mr. Artis-Bryan agreed to meet later for their return trip to Wilkes-Barre at a gas station in New Jersey.

10. Ms. Muhammad drove the van back to Pennsylvania; Mr. Artis-Bryan drove the Impala.

11. Trooper Cortes was operating radar on Route 80 on May 13, 2012.

12. The Dodge Caravan driven by Zarinah Muhammad and the Impala driven by the defendant came through the radar and were determined by the trooper to be

2

speeding. The Dodge Caravan came through the radar zone at 70 and the Chevy Impala was also clocked at 70 miles per hour in a 55 mile per hour zone.

13. Trooper Cortes then followed and stopped the Chevrolet Impala and Trooper Conrad followed and stopped the Dodge Caravan.

14. During the stop, Ms. Muhammad received phone messages from Mr. Artis-Bryan telling her not to allow a search of the van.

15. When Trooper Cortes made contact with the defendant, the defendant stated that he did not have a driver's license or any identification with him. The defendant identified himself with a false name and date of birth. NT 9.

16. The defendant denied that he was traveling with Zarinah Muhammad and he denied knowing her. NT 26.

17. The Dodge Caravan was rented by a third party. NT 24, April 15, 2013.

18. The Chevy Impala was a rental car rented in the name of Tishawna Dixon, the only authorized driver. An examination of the rental does not make clear when the agreement was to expire.

19. Trooper Cortes asked for permission to search the defendant's person which was granted. NT Preliminary hearing, p. 8. He found a Pennsylvania identification card in the waistband of the defendant's pants.

20. When the trooper checked the name the defendant gave him, he determined that it was an alias, and that the defendant had a significant criminal history that included involvement with illegal drugs.

21. When Ms. Muhammad was pulled over by Trooper Conrad, the trooper asked her for the rental agreement for the vehicle. She told him that "Church" had it. NT 30. "Church" was the defendant.

22. The state police had the vehicles searched by a dog, which reacted to what the police believed to be the presence of illegal drugs in both vehicles.

23. The troopers searched the vehicles. The defendant did not consent to the search of the Chevrolet Impala rental vehicle. NT 25.

24. The police found an open brown paper shopping bag on the floor of the Dodge Caravan behind the driver's seat and the front passenger's seat that contained 2,500 packets of heroin and a quarter kilo of crack cocaine. Defendant's clothing, mail, New Jersey criminal charges and mail to him from the Pennsylvania Board of Probation and Parole were found in the Dodge Caravan. Preliminary hearing, NT 13. April 15, 2010 hearing, NT 10.

25. No illegal substances were found in the Impala being driven by the defendant.

26. A plastic bag was found in the Impala that had hundreds of small black rubber bands, commonly used to wrap bundles of heroin. Preliminary hearing, NT 13. The same type of rubber band was found in the Dodge Caravan along with the packets of heroin. *Id.*

### DISCUSSION

The Defendant has filed an omnibus pretrial motion in which he includes a Motion to Suppress the rubber bands that were seized during the traffic stop of the vehicle he was driving and the contraband seized after the stop of the vehicle Zarinah

4

Muhammad was driving. He also seeks a dismissal of the charges against him due to an alleged lack of a prima facie case.

The Defendant has challenged the warrantless police search of the rental cars that he and Zarinah Muhammad were driving. "Warrantless searches and seizures are...unreasonable *per se,* unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement." *Commonwealth v. Burgos,* 64 A.3d 641, 648 (Pa. Super. 2013) (citations omitted). Under Pennsylvania law, a defendant charged with a possessory offense has automatic standing to challenge a search. *Commonwealth v. Perea,* 791 A.2d 427 (Pa.Super.2002), appeal denied, 568 Pa. 736, 798 A.2d 1288 (2002); *Commonwealth v. Strickland,* 707 A.2d 531 (Pa.Super.1998), appeal denied, 556 Pa. 675, 727 A.2d 130 (1998). "However, in order to prevail, the defendant, as a preliminary matter, must show that he had a privacy interest in the area searched." *Perea, supra* at 429 (citing *Commonwealth v. Sell,* 470 A.2d 457 (Pa. 1983)).

> An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

*Commonwealth v. Brundidge,* 620 A.2d 1115, 1118 (Pa.1993) (internal citations and quotation marks omitted).

Defendant Artis-Bryan thus had the preliminary burden of establishing by a preponderance of the evidence that he had a reasonable expectation of privacy in the vehicles. *Com v. Burton,* 973 A.2d 428, 435 (Pa. Super. 2009). The evidence presented

established that the vehicle Artis-Bryan was driving was rented in the name of Tishawna Dixon. *NT 16, April 15, 2013, Rental agreement, Commonwealth's Exhibit 7.* She was the only authorized driver. *Id.* At the time of the stop, Defendant told Trooper Cortes that the car was rented by his girlfriend, for him. NT 53, April 15, 2013. He also told the trooper that he was "coming back from Newark, New Jersey, going to see the girl who rented the car." NT 7, *Preliminary Hearing Transcript,* Commonwealth Exhibit 1, February 25, 2013. Further, while Trooper Cortez asserted that the rental agreement was expired when he examined it at the scene of the stop. NT 14, 4/15/2013, an examination of the rental agreement is inconclusive as to the date the vehicle was to be returned. The only clear date on the rental agreement is May 11, 2012 which was the "Car Out" date in the upper left hand corner and the date the rental agreement was signed. The total charge for the rental appeared to be $923.99, which was more than the monthly rental amount of $799.99 per month. *Rental agreement.*

The Commonwealth contends that Defendant had no expectation of privacy in the Chevrolet Impala. In making that assertion, Commonwealth relies on *Commonwealth v. Maldonado,* 14 A.3d 907 (Pa. Super. 2011) and *Commonwealth v. Jones,* 874 A.2d 108 (Pa. Super. 2005). In *Jones,* the Superior Court found that the defendant did not have a reasonable expectation of privacy in the rental car that he was driving, based on the surrounding circumstances. The *Jones* court stated: "(a)ppellant's subjective expectation of privacy was not reasonable where he was the operator of a rental car but not the named lessee, was not an authorized driver, the named lessee was not present in the vehicle, Appellant offered no explanation of his connection to the named lessee, and the return date for the rental car had passed." *Jones,* 874 A.2d at

6

120. Based on those facts, the Superior Court determined that the evidence found in the car Jones was driving was properly admitted.

The Superior Court reached a similar result in *Maldonado*. There, defendant was held to lack a reasonable expectation of privacy in the vehicle being searched. The circumstances in *Maldonado* were similar to those in *Jones*. The Court stated: "We conclude that Maldonado failed to establish an expectation of privacy in the vehicle he was driving, which "he did not own, that was not registered to him, and for which he has not shown authority to operate."" *Maldonado*, 14 A.3d at 911 (quoting *Commonwealth v. Burton*, 973 A.2d 428, 436 (Pa. Super. 2009)).

This case can be distinguished from the *Jones* and *Maldonado* decisions. Here Artis-Bryan has provided uncontradicted evidence that he was operating the vehicle with the consent of the vehicle lessee, Tishawna Dixon. Although the trooper believed that the rental agreement was expired, that is not obvious from an examination of the contract. The trooper did not contact Enterprise, the vehicle owner, to determine the status of the agreement, or for permission to search the vehicle. Rather Trooper Cortes testified that he did not need permission to search:

Q: (Mr. Saurman) So what was your basis to say you had cause to search his car?

A: Well, neither vehicle was rented by either operator, so it's a third party rental vehicle.

Q: Trooper, you'll agree with me that if there's a valid rental agreement in place, you have no right to search that car without the permission of either the renter or the car company?

A: No. They have – the rental companies permit us. They actually want us to search the vehicles. They don't want – they want the vehicle impounded, and they don't want it returned to them where there could be potential contraband.

7

Q: Do you have a standing order from Enterprise to search anyone's car when someone else's name who is driving it is not the one on the rental agreement?

A: That's what – every time we had contacted them in the past, that's what they expressed us to do.

Q: So in the past, they have said to do this. So your assumption is that every time you pull over a car, you should just search it if it's Enterprise and the driver is not the same?

A: If it's a rental vehicle and the driver, the occupants of the vehicle, nobody is on the rental agreement, it's a third party rental vehicle where it's not rented by someone else that it says no other driver is permitted, then yes, we search the vehicle. There's no expectation of privacy. NT 24, 25, April 15, 2013.

The defendant established a reasonable subjective expectation of privacy in the rental vehicle. Unlike the *Maldonado* and *Jones* situations, there was an explanation of how Artis-Bryan came to be in possession of the vehicle. The rental agreement was not clearly expired. Although Artis-Bryan was not a named driver, the vehicle was not reported stolen and the police did not have a reasonable suspicion of theft. Our courts have never approved a non-consensual vehicle search only because a rental contract does not list the driver as an authorized driver.

"[W]here a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible." The Commonwealth has not met its burden here. Defendant explained his authority to drive the rental vehicle. This, coupled with the unclear status of the rental vehicle agreement, should have led the Trooper to take further steps.[1]

---

[1] In *Jones*, the Superior Court relied on the reasoning of the Supreme Court of Montana in *State v. Hill*, 94 P.3d 752 (2004). While the Court in *Hill* ultimately upheld the search, under very similar factual circumstances, the officer there requested and received permission from the rental car company, Avis, to impound the car and conduct a search. Such a step is notably absent here.

8

When confronted with a driver of a rental car who claims to have authority to drive the vehicle, an Officer must obtain the consent of a party with authority to give the same (be it the rental car company on an expired contract, the driver or the named lessee) absent evidence that the car is stolen or abandoned. Defendant had a reasonable expectation of privacy in the car. Trooper Cortes did not have a search warrant and did not receive consent to conduct the search. Therefore, the evidence recovered from the Chevrolet Impala will be suppressed.

The evidence seized during the search of the Dodge Caravan, which was driven by Ms. Muhammad, will not be suppressed. Artis-Bryan clearly had no reasonable expectation of privacy in the Caravan. He was not operating the vehicle at the time of the search. He was not the owner or lessee of the same. He did not even contend that he knew the Caravan was on the road near him. NT 4, *Transcript of Preliminary Hearing*, NT 62-64.

Artis-Bryan is attempting to suppress the evidence obtained from the Caravan by asserting the Constitutional rights of Ms. Muhammad, the driver of the Caravan at the time of the search. However:

> Article 1, Section 8, of our state constitution, as well as the Fourth Amendment of the United States Constitution, does not permit a defendant to vicariously assert the privacy rights of others:

> The polestar of the expanded protection afforded by Article 1, Section 8, which distinguishes it from its federal counterpart, is its emphasis upon personal privacy interests. In keeping with the historical intention of Article 1, Section 8, this Court has repeatedly refused to recognize the vicarious assertion of constitutional rights.

> [I]n consistently declining to recognize derivative standing, this Court has spoken directly to the policy considerations underlying Article 1, Section 8:

9

> The fourth amendment to the Constitution of the United States guarantees that [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. To the same effect is Pa. Const. art. [1], § 8, P.S. These rights are personal in nature. There is no necessity to exclude evidence against one person in order to protect the rights of another. No rights of the victim of an illegal search are at stake when the evidence is offered against some other party. In order to obtain standing to challenge the legality of the search, a defendant must establish that he, rather than another, was the victim of an invasion of privacy.

*Commonwealth v. Powell*, 994 A.2d 1096, 1107-08 (Pa. Super. 2010) (internal citations and quotations omitted). In other words, "[s]uppression of product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants [are accorded] no special standing." *Alderman v. U.S.*, 394 U.S. 165, 171-72 (1969). Artis-Bryan has not shown that the search of the car driven by Ms. Muhammad violated his own personal privacy interests in any way. Therefore, the evidence gathered from that search will not be suppressed.

As the Court has suppressed the evidence found in the car driven by Artis-Bryan, and determined that Artis-Bryan has no standing to challenge the actions of the police regarding Ms. Muhammad, his contention that the police lacked valid legal cause to initiate the traffic stop is moot.

Finally, Defendant asserts that the Commonwealth has failed to make out a prima facie case against him. This contention is essentially summarized as follows:

> It is undisputed that the alleged contraband in this case was found in the vehicle driven by Muhammad and that nothing illegal was found in the Artis-Bryan vehicle. Therefore, in order to establish a prima facie case against Artis-Bryan, the Commonwealth must establish a connection between him and the drugs. In this case the Commonwealth has failed to make such a connection.

10

*Defendant's Brief in Support of His Omnibus Pretrial Motions*, Section C Part 4.

"At the pre-trial stage of a criminal prosecution, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt, but rather, its burden is merely to put forth a *prima facie* case of the defendant's guilt." *Commonwealth v. Huggins*, 836 A.2d 862, 866 (Pa. 2003). "To sustain that burden it is well settled that the Commonwealth must produce evidence, such as to present sufficient probable cause to believe that the person charged has committed the offense stated." *Commonwealth v. Wodjak*, 466 A.2d 991, 995-6 (Pa. 1983) (internal citations and quotations omitted). "[I]n other words, it should make out a prima facie case of guilt. It should be such that if presented at the trial in court, *and accepted as true,* the judge would be warranted in allowing the case to go to the jury." *Id.* (citing *Commonwealth ex rel Scolio v. Hess*, 27 A.2d 705, 707 (Pa. Super. 1942) (emphasis in original)).

Further, "[i]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case." *Huggins*, 836 A.2d at 866. Additionally, "[t]he weight and credibility of the evidence are not factors at this stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense." *Commonwealth v. Marti*, 779 A.2d 1177, 1180 (Pa. Super. 2001).

Defendant has been charged with "Possession with Intent to Deliver" and Criminal Conspiracy to do the same. Defendant correctly asserts that no contraband

11

was found in the Chevrolet Impala, and instead all the contraband was found in the Caravan driven by Ms. Muhammad.

"When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession...." *Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996), appeal denied, 692 A.2d 563 (Pa. 1997). "Constructive possession is the ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control." *Commonwealth v. Kirkland*, 831 A.2d 607, 610 (Pa.Super.2003), appeal denied, 847 A.2d 1280 (Pa. 2004) (citing *Commonwealth v. Macolino*, 469 A.2d 132 (Pa. 1983)). "[T]wo actors may have joint control and equal access and thus both may constructively possess the contraband." *Haskins*, 677 A.2d at 330. "The intent to exercise conscious dominion can be inferred from the totality of the circumstances." *Kirkland*, 831 A.2d at 610.

Here, the Commonwealth has presented evidence in the form of testimony from Ms. Muhammad. She stated that she saw Defendant put shopping bags into the Caravan. NT 20. It was in a similar shopping bag that the police found the contraband when searching the car. Additionally, Artis-Bryan's mail, clothes, New Jersey criminal charges and mail to him from the Pennsylvania Board of Probation and Parole were found in the Dodge Caravan. Preliminary hearing, NT 13, April 15, 2010 hearing, NT 10. Taken in the light most favorable to the Commonwealth, this evidence shows that Defendant placed the contraband in the Caravan and intended to exercise dominion and control over the same, as it was placed with his personal effects which he presumably intended to recover at a later time. This evidence, if taken as true, would be

12

sufficient to send the case to the jury. Therefore the Commonwealth has made a prima facie case as to Artis-Bryan's constructive possession of the narcotics.

To establish the offense of possession of a controlled substance with intent to deliver, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it." *Kirkland, supra* at 611 (citing *Commonwealth v. Conaway*, 791 A.2d 359 (Pa. Super. 2002); *Commonwealth v. Aguado*, 760 A.2d 1181 (Pa. Super. 2000)).

The trier of fact may infer that the defendant intended to deliver a controlled substance from an examination of the facts and circumstances surrounding the case. Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant. *Kirkland, supra* at 611. "Thus, possession with intent to deliver can be inferred from the quantity of the drugs possessed and other surrounding circumstances, such as lack of paraphernalia for consumption." *Commonwealth v. Torres*, 617 A.2d 812, 814 (Pa. Super. 1992), appeal denied, 629 A.2d 1379 (Pa. 1993).

Given the amount of narcotics seized from the Dodge Caravan (2,500 heroin packets and ¼ kilo of crack cocaine) a reasonable inference can be drawn that Defendant possessed the narcotics with the intent to deliver the same. The Commonwealth has made a prima facie case against Defendant for possession with intent to deliver.

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA : No. 1225 CR 2012

vs.

JAMES ANTON ARTIS-BRYAN, :

Defendant :

## O R D E R

AND NOW, this 13th day of August, 2013, upon consideration of Defendant Artis-Bryan's Omnibus Pretrial Motion, and the arguments and briefs of the Defendant and the Commonwealth, **IT IS ORDERED** as follows:

1. The request to suppress the evidence seized from the car driven by Mr. Artis-Bryan, the Chevrolet Impala, is **granted**.

2. The request to suppress the evidence seized from the Dodge Caravan is **denied**.

3. The defendant's request for habeas corpus relief is **denied**.

BY THE COURT:

ARTHUR L. ZULICK, J.

cc: Mark S. Matthews, Esq.
Robert Saurman, Esq.

ALZ2013-035