937 A.2d 421

**In the Interest of J.E., a minor,**

**Appeal of Commonwealth of Pennsylvania.**

Supreme Court of Pennsylvania.

Argued Sept. 10, 2007.

Decided Dec. 27, 2007.

Margaret B. Ivory, Office of the Dist. Atty., for the Com. of PA, appellant.

Carrie Lynn Allman, for J.E., a minor, appellee.

Peter Rosalsky, Defender Ass'n of Philadelphia, for Defender Ass'n of Philadelphia, appellee amicus curiae.

BEFORE: CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## *OPINION*

Justice FITZGERALD.

We decide whether, under the circumstances of this case, a juvenile probation officer's warrantless search of a probationer's bedroom, which resulted in the seizure of a firearm from beneath a mattress, must be supported by a reasonable suspicion that the juvenile possessed contraband or was in violation of the conditions of his supervision. We hold that reasonable suspicion is indeed required in such a case, that it was lacking here, and that the search conducted was therefore improper. We affirm the Superior Court's decision reversing the adjudication and remanding the matter to the trial court.

### Background

At the time of these events, appellee J.E. was on juvenile probation. On February 10, 2005, Probation Officer Greg Willig, along with several other probation and police officers, went to J.E.'s residence in Pittsburgh, armed with an arrest warrant for J.E.'s step-brother (Brother), who was also on juvenile probation and had failed to appear for a court hearing. The officers did not go to the residence for any reason involving J.E. Upon arriving at the residence, J.E.'s stepmother ("Stepmother") answered the door and informed the officers that Brother was not at home, but that J.E. was upstairs in his bedroom. Probation Officer Willig told Stepmother that the officers would still need to search the house for Brother.

Officer Willig, with two other probation officers, went upstairs and found J.E. in his third-floor bedroom, sitting on a bed, watching television. Probation Officer Willig directed J.E. to stand up, and then conducted a pat-down search, which did not result in any seizure. J.E. appeared to be very nervous and was shaking during the pat-down. Officer Willig

believed J.E. was hiding something, so he lifted up the mattress of the bed on which J.E. had been sitting and found a gun, which he seized.

Following the filing of weapons charges, J.E. sought suppression of the gun. At a hearing on the motion, the Commonwealth and defense presented the following testimony. Officer Willig testified that he was the probation officer in charge of warrants for the county, and knew that J.E. was on juvenile probation, but that he had had no prior dealing with either J.E. or Brother. He testified that based on his experience, he knew that probationers are required to sign a Conditions of Probation form, which includes consent to a search of the probationer's person at any time. Officer Willig also testified that he routinely conducted "frisks" of juvenile probationers when they are present during the service of a warrant, to ensure the safety of the officers present. He stated that the officers "were going to search him . . . [to] make sure he is following the rules of supervision and conditions of probation and for our safety." N.T. 4/14/05, 7.

Officer Willig testified that, based on his experience, the fact J.E. was shaking during the pat-down frisk was "a pretty good indication that somebody is trying to hide something." Officer Willig further testified that he had heard from an "informant" that J.E. may have been involved in a shooting. Officer Willig could not articulate whether this information was received from a known or anonymous informant, and he stated, "I don't recall the source." He confirmed that to his knowledge, J.E. was not in violation of his probation at the time of the search.

Probation Officer Jon Marzoch provided the trial court with a signed copy of the Condition of Supervision form executed by J.E., which included the condition that the juvenile must submit to a search by the probation officer as directed.

The defense presented evidence from Stepmother that J.E. had a medical condition which caused him to shake all the time. She testified, "He shakes if he is yelled at." N.T. 4/14/05, 36. The trial court found Stepmother's testimony to

be unpersuasive, noting that she was unable to provide the court with a name for the medical condition, or any medical records. The court also found that there was no evidence that Officer Willig had any knowledge of J.E.'s purported condition when he made his decision to conduct the search and seizure.

Ultimately, the trial court denied J.E.'s motion to suppress the gun, adjudicated him delinquent for Possession of a Firearm by a Minor (18 Pa.C.S. § 6110.1a) and Possession of a Firearm Without a License (18 Pa.C.S. § 6106), and found him to be in violation of the terms of his juvenile probation. The court committed J.E. to the Youth Forestry Camp on May 12, 2005 and the matter was listed for review on October 13, 2005.

On appeal, a divided panel of the Superior Court[1] held the trial court had erred in denying the motion to suppress the gun as the probation officer lacked reasonable suspicion that J.E. had engaged in criminal activity, or was in violation of his probation. Superior Court reversed the trial court's commitment order and remanded the matter. *In the Interest of J.E.*, 907 A.2d 1114 (Pa.Super.2006). The Commonwealth sought review by this court pursuant to 42 Pa.C.S. § 724(a), and we granted the petition for allowance of appeal.

The Commonwealth asserts that the Superior Court erred in determining that the search was not supported by reasonable suspicion. The Commonwealth further argues that the Juvenile Act, 42 Pa.C.S. § 6304, which empowers probation officers to conduct searches, requires that suppression be denied. Finally, the Commonwealth asserts that the Superior Court erred in holding that a probationer is afforded protection in these circumstances, under either the Federal Constitution, or the Constitution of this Commonwealth. We begin our analysis with the language of the relevant statute, which provides as follows:

**(a.1) Authority to search.—**

(1) Probation officers may search the person and property of children:

1. Judge McCaffery filed a dissenting opinion. 907 A.2d at 1122-26.

(i) under their supervision as delinquent children or pursuant to a consent decree in accordance with this section; * * *

(2) Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or section 8 of Article I of the Constitution of Pennsylvania.

(3) No violation of this section shall constitute an independent ground for suppression of evidence in any proceeding.

(4)(i) A personal search of a child may be conducted by any probation officer:

(A) if there is reasonable suspicion to believe that the child possesses contraband or other evidence of violations of the conditions of supervision. * * *

(ii) A property search may be conducted by any probation officer if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the child contains contraband or other evidence of violations of the conditions of supervision. * * *

(vi) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with that case law, the following factors, where applicable, may be taken into account:

(A) The observation of officers.

(B) Information provided by others.

(C) The activities of the child.

(D) Information provided by the child.

(E) The experience of the probation officer with the child.

(F) The experience of probation officers in similar circumstances.

(G) The prior delinquent and supervisory history of the offender.

(H) The need to verify compliance with the conditions of supervision.

42 Pa.C.S. § 6304(a.1)(1), (2), (3), and (4).

## Discussion

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831, 842 (2003). Where the prosecution prevailed in the suppression court, we may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. *Id.* Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Id.*

Initially, we note that this Court has previously held that probationers and parolees have limited Fourth Amendment rights because of a diminished expectation of privacy. *Commonwealth v. Williams*, 547 Pa. 577, 692 A.2d 1031, 1035 (1997) (citing *Griffin v. Wisconsin*, 483 U.S. 868, 873–74, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)). Furthermore, in *Williams,* we held that even where a parolee signs a consent form acknowledging that parole officers could conduct a warrantless search of his premises, such consent applied only to a search that was reasonable, *i.e.,* one for which the parole officer had a reasonable suspicion that the parolee had committed a parole violation and one that was reasonably related to the parole officer's duties. *Williams,* 692 A.2d at 1036–37.

The Commonwealth first argues that Superior Court erred in reversing the suppression order because the trial court properly found that Officer Willig's search was supported by reasonable suspicion. In any event, the Commonwealth argues, the search was proper because it was conducted pursuant to the "protective sweep" doctrine, which allows for limited

searches to ensure the safety of the arresting officers. Appellant's Brief at 16–17 (citing *Commonwealth v. Taylor*, 565 Pa. 140, 771 A.2d 1261, 1267 (2001)). *See also Maryland v. Buie*, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).

The trial court concluded that J.E.'s nervousness and shaking during the pat-down, and Officer Willig's knowledge that J.E. might have been involved in a shooting (and therefore might be in possession of a weapon), provided Officer Willig with sufficient reasonable suspicion to search the immediate area around J.E. The trial court considered the factors set forth in § 6304(a.1)(4)(vi) and concluded that Probation Officer Willig's observations warranted the search. Trial Court Opinion at 8–9.

The statute defines a personal search as including a search of clothing and any personal property in the juvenile's possession or within his reach or under his control. 42 Pa.C.S. § 6304(c). The plain language of the statute requires that prior to such a search, law enforcement must have reasonable suspicion to believe that the child possesses, or the property under the control of the juvenile contains, "contraband or other evidence of violations of the conditions of probation." 42 Pa.C.S. §§ 6304(a.1)(4)(i)(A); (a.1)(4)(ii).

Officer Willig testified that when he initiated his search of J.E., he did so for safety reasons. He testified to having no prior contact with J.E., and could not state why J.E. was on probation. N.T. 4/14/05, 28. When questioned by the court as to why he had safety concerns, he testified, "Any warrant that we serve, if there is [sic] other kids on probation we are going to pat them down to-just for our safety-to see if they have anything on them that they are not supposed to have." N.T. 4/14/05, 30. When questioned by the court if he had received any information that either J.E. or Brother might be in possession of a weapon or contraband of any sort, Willig testified, "We also had a reasonable suspicion that he could have been involved in a shooting in the Beltzhoover area." N.T. 4/14/05, 31. He stated that the suspicion was based upon "information received," but "[could not] recall the source." N.T. 4/14/05, 30–31.

The Commonwealth presented no further evidence from either Officer Willig, or any other witness, as to the identity of the source or the source's purported basis for providing the tip, whether from the source's personal knowledge, or from information provided to the source by others. The Commonwealth likewise presented no evidence regarding the reliability of the source, and presented no evidence of any effort by Officer Willig, or any other probation officer or police officer, to corroborate or attempt to corroborate the tip.

 Although a tip may sometimes provide a basis for the establishment of reasonable suspicion, the testifying officer must be able to articulate his reasons for formulating a reasonable suspicion, including the reliability of any informant. *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A tip from an unknown or anonymous informant requires some degree of corroboration to justify the finding of reasonable suspicion. *Alabama v. White,* 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *Williams,* 692 A.2d at 1037.

██ Here, the circumstances surrounding the "tip," and the lack of any corroborative evidence as to the reliability of either the informant or the alleged activities of J.E., are fatal to any finding that Officer Willig possessed reasonable suspicion that J.E. possessed contraband or was in violation of the terms of his probation.

In his dissenting opinion, Justice Eakin relies on *Commonwealth v. Zhahir,* 561 Pa. 545, 751 A.2d 1153 (2000), and *In the Interest of D.M.,* 556 Pa. 160, 727 A.2d 556, (1999). But both cases presented far different facts than those here. In *Zhahir,* officers investigating narcotics sales observed that the defendant not only matched a police description, but also was engaged in "suspicious and furtive behavior" prior to the search. *Zhahir,* 751 A.2d at 1157. Upon seeing police, the defendant discarded an item and thereafter attempted to retrieve it when he thought police had left the area. We concluded that this "observation of suspicious conduct on the part of the suspect" contributed to the reasonable suspicion

538

necessary to support the search. *Id.* Similarly, in *D.M.*, police promptly arrived on the scene of a reported armed robbery and saw several men who matched the police description. When the men saw police, they abruptly changed their direction and quickly walked away. This Court noted that the police report was particularly reliable because it came from the victim, rather than an anonymous source. *D.M.*, 727 A.2d at 558. We concluded that under these circumstances, an experienced police officer would reasonably believe that the men were engaged in criminal activity.

In this case, law enforcement officers made no observations of suspicious behavior on J.E.'s part prior to commencing the search. There were no additional indications in support of the tip that Officer Willig possessed. The only other thing police knew was that J.E. was a juvenile on probation. The fact that J.E. began shaking *after* the search commenced cannot be deemed part of the "suspicious conduct" necessary for the search in the first place. In the absence of reasonable suspicion, the search was improper.[2]

The Commonwealth argues that even if the statute's reasonable suspicion standard has not been met, suppression is unwarranted in light of the statute's own provisions. The Commonwealth relies on subsection 6304(a.1)(3), which provides: "[n]o violation of this section shall constitute an independent ground for suppression of evidence in any proceeding." 42 Pa.C.S. § 6304(a.1)(3). In making this argument, the Commonwealth fails to consider another subsection of the statute, 6304(a.1)(2), which provides "[n]othing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or Section 8 of Article 1 of the Constitution of Pennsylvania." 42 Pa.C.S.

**2.** The "protective sweep" doctrine provides no independent basis to validate the search. A protective sweep search is a quick and limited search of the premises, incident to an arrest, conducted to ensure the safety of the arresting officer. Its scope extends only to a visual inspection of those places that may harbor a person, who may constitute a danger to the officer. *Taylor*, 771 A.2d at 1267 (citation omitted). In this case, Officer Willig's search of J.E. and the area around him did not fit within the protective sweep doctrine.

§ 6304(a.1)(2). We reject the Commonwealth's interpretation of the statute for the following reasons.

In drafting this portion of the Juvenile Act, the Legislature explicitly deferred to the protections afforded probationers under the federal and state constitutions. In *Williams*, this Court held that federal constitutional principles required probation and parole officers to have reasonable suspicion in order to search a person under their control. 692 A.2d at 1036–37. The Commonwealth suggests that we can ignore this holding in *Williams* in light of the United States Supreme Court's recent decision in *Samson v. California*, 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006). In *Samson*, the Court held that a California law allowing the search of a parolee with no warrant and no level of suspicion did not offend the Fourth Amendment prohibition against unreasonable searches. *Id.* at ——, 126 S.Ct. at 2202. The Commonwealth argues that *Samson* makes it clear that reasonable suspicion is not required for the search of parolee. Further, argues the Commonwealth, because this Court determined in *Williams* that probationers and parolees have the same rights with respect to searches, the rule in *Samson* applies to the probationer in this case. Upon review, we conclude that the Commonwealth's reliance on *Samson* is misplaced.[3]

The *Samson* Court, in determining whether a suspicionless search conducted pursuant to the California statute violated the Constitution, relied primarily on the fact that "parolees are on the 'continuum' of state-imposed punishments ... and have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to

**3.** We observe that the Commonwealth encourages us to conclude that *Samson* essentially invalidates our ruling in *Williams* that some degree of suspicion is required in order to search a parolee. At the same time, the Commonwealth encourages us to hold fast to our rationale in *Williams* that there is no difference between the rights of a probationer and a parolee when it comes to the authority to search. *Williams,* 692 A.2d at 1035 n. 7. Essentially, the Commonwealth seeks to impose that part of the *Samson* decision that benefits it (reasonable suspicion not required for search of a parolee) and ignore that part of the *Samson* decision that operates to its detriment (there is a marked difference between the rights of probationers and parolees).

imprisonment ... [P]arolees enjoy even less of the average citizen's absolute liberty than do probationers." *Id* at ——, 126 S.Ct. at 2198 (citations omitted). Because the United States Supreme Court found this reduced expectation of privacy applicable only to parolees, the Superior Court was not bound to apply this reduced expectation to probationers in the context of this case. This is particularly true because in *Samson,* a California statute reduced the *parolee's* expectation of privacy by *eliminating* any requirement of individualized suspicion. In the instant case, the applicable statute, our Juvenile Act, confirms a juvenile *probationer's* expectation of privacy by *requiring* individualized "reasonable suspicion." *Samson* simply does not control.

## Conclusion

We conclude that Section 6304 of the Juvenile Act requires reasonable suspicion that a probationer possesses evidence of contraband or other evidence of a probation violation. Because reasonable suspicion was lacking here, the trial court erred in denying the motion to suppress. The Superior Court properly reversed that order, and we affirm the Superior Court's decision.

Order affirmed.

Chief Justice CAPPY, Justices BAER and BALDWIN join the opinion.

Justice SAYLOR files a dissenting opinion in which Justices CASTILLE and EAKIN join.

Justice EAKIN files a dissenting opinion.

Justice SAYLOR dissenting.

Because I would conclude that the officers' search of J.E., which extended to the area within his immediate control, was justified to ensure their safety, I respectfully dissent. In this regard, the officers were legitimately on the premises to execute an arrest warrant for J.E.'s stepbrother, who was also a juvenile on probation. In the process of searching the residence for the subject of the warrant, the officers encoun-

tered J.E., a probationary juvenile, in a bedroom. In my view, the officers acted reasonably in conducting a limited personal search of J.E. to ensure that he was not armed and would not harm the officers, particularly as J.E. was shaking and Officer Willig had been informed previously that J.E. may have been involved in a shooting. *See Griffin v. Wisconsin,* 483 U.S. 868, 880, 107 S.Ct. 3164, 3172, 97 L.Ed.2d 709 (1987) (citing to "the very assumption of the institution of probation that the probationer . . . is more likely than the ordinary citizen to violate the law" to hold that information that a probationer "had or might have guns" justified a search of the individual). Furthermore, because of J.E.'s probationary status, the scope of the weapons search was not confined solely to his person, but extended to any personal property in the minor's possession and control or within his immediate reach. *See* 42 Pa.C.S. § 6304(c); *see also Terry v. Ohio,* 392 U.S. 1, 25, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968) (explaining that a protective search is "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby"). Thus, I agree with Judge McCaffery's dissenting analysis that, under the totality of the circumstances, the search of J.E., "was the essence of reason . . . [given] the potentially catastrophic threat that the probation officers faced from [J.E.] had they simply ignored his presence and the fact of his criminal past, a potentiality graphically illustrated by the fact that [J.E.] had within his reach at the time he was searched a fully operable handgun." *In re J.E.,* 907 A.2d 1114, 1125 (Pa.Super.2006) (McCaffery, J., dissenting).

Accordingly, I would reverse the order of the Superior Court.

Justices CASTILLE and EAKIN join this dissenting opinion.

Justice EAKIN dissenting.

I respectfully dissent from the majority's conclusion that the probation officer lacked reasonable suspicion to search appellee's person and property. The majority focuses on one fact:

the basis for the officer's knowledge of appellee's potential involvement in a crime was an uncorroborated tip. One must question the sanity of any officer who would ignore such a warning; any reasonable officer would never ignore such a tip, and whether eventually verified or disproved, would take the limited and very sensible precautions taken here.

The tip, in conjunction with appellee's nervous behavior, viewed through the eyes of an experienced officer alerted to the potential of appellee's involvement in recent violence, led to the reasonable conclusion that something was amiss.[1] *See In the Interest of D.M.*, 556 Pa. 160, 727 A.2d 556, 559 (1999); *id.*, at 559–60 ("The evidence ... must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."); *see also Commonwealth v. Zhahir*, 561 Pa. 545, 751 A.2d 1153, 1157 (2000) (where source of officers' information is unknown, necessary corroboration may be supplied by circumstances independent of tip, *e.g.*, observation of suspect's suspicious conduct). I would thus reverse the Superior Court and uphold the trial court's finding that under these facts, there was reasonable suspicion for the search, and the gun was admissible evidence.

---

1. Having concluded there was reasonable suspicion, I would not reach the issue of whether *Samson v. California*, 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) (reasonable suspicion not required for search of parolee), applies.