J-S14001-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
                                       :        PENNSYLVANIA
            Appellee : 
                                         :
          v.                              :
                                         :
DELANO CURTIS MUNFORD,        :
                                         :
           Appellant      :   No. 3035 EDA 2012

Appeal from the Judgment of Sentence September 28, 2012,
Court of Common Pleas, Bucks County,
Criminal Division at No. CP-09-CR-0004822-2012

BEFORE: DONOHUE, OLSON and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.:               **FILED MARCH 02, 2015**

Delano Curtis Munford ("Munford") appeals from the judgment of sentence entered following his conviction of possession of marijuana with the intent to distribute ("PWID"), 35 P.S. § 780-113(a)(30). We affirm.

On appeal, Munford challenges only the trial court's denial of his motion to suppress. Munford's Brief at 5.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's

> legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review. Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Ranson*, 103 A.3d 73, 76 (Pa. Super. 2014).

The facts as found by the trial court, and supported by the evidence of record, are as follows. On May 30, 2012, Officer Gregory Smith of the Bensalem Police Department went to Munford's residence at 3110 Knights Road to execute a warrant for Munford's arrest for felony PWID. N.T., 9/28/12, at 5-6. Officer Smith, a ten-year veteran with the Bensalem Police Department, had been a member of the narcotics unit for five years and had served many arrest and search warrants as part of his position. *Id.* at 4. Officer Smith testified that serving arrest warrants for felony-level drug offenses is very dangerous, often involves violent people, and a common concern is the presence and use of deadly weapons against the police when executing an arrest warrant. *Id.* at 5.

Officer Smith approached Munford's door with three other officers. *Id.* at 6, 9. They heard "several individuals inside talking" before knocking on the door. *Id.* After the officers knocked on the door, between fifteen and thirty seconds elapsed before Munford answered the door. *Id.* From the entrance to the apartment the officers could see Munford's living room. *Id.*

at 7. Officer Smith observed two or three other people sitting on the sofa. *Id.* at 6. He and Corporal Schwartz entered the residence while one of the remaining officers took Munford into custody. *Id.* The officers entered the apartment to determine whether these people presented a threat to the officers' safety. *Id.* at 25. At that moment, another person emerged from the bathroom, which was down a short hallway from the living room. *Id.* at 6. The officers instructed this person to sit on the sofa and then, out of concern for the officers' safety, Officer Smith and Corporal Schwartz looked in the bedroom (which was adjacent to the bathroom) to determine whether anyone else was in the apartment. *Id.* at 6-8. As they looked into the bedroom, they observed segments of marijuana cigarettes, or "roaches," on the nightstand. *Id.* at 8-9.

Munford filed a motion to suppress arguing that the officers' search of his residence, and resulting seizure of the marijuana roaches, was impermissible because they did not have a search warrant for the premises. At the conclusion of a hearing on Munford's motion, the trial court found that the officers' conduct was a permissible protective sweep incident to arrest and that because the roaches were discovered in plain view during this permissible action, Munford was not entitled to suppression of the contraband. *Id.* at 26.

We find no error in this determination by the trial court. Generally, a warrant is required for a lawful search of a premises; however, "[i]t is well-

settled that under emergent circumstances, protective sweeps are a well-recognized exception to the warrant requirement." ***Commonwealth v. Potts***, 73 A.3d 1275, 1281 (Pa. Super. 2013), *appeal denied*, 83 A.3d 415 (Pa. 2013) (citation omitted).

"A protective sweep search is a quick and limited search of the premises, incident to an arrest, conducted to ensure the safety of the arresting officer. Its scope extends only to a visual inspection of those places that may harbor a person, who may constitute a danger to the officer." ***In re J.E.***, 937 A.2d 421, 427 n.2 (Pa. 2007). There are two levels of protective sweeps, which have been defined as follows:

> [A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

***Potts***, 73 A.3d at 1281 (quoting ***Maryland v. Buie***, 494 U.S. 325 (1990)).

> Pursuant to the first level of a protective sweep, without a showing of even reasonable suspicion, police officers may make cursory visual inspections of spaces immediately adjacent to the arrest scene, which could conceal an assailant. The scope of the second level permits a search for attackers further away from the place of arrest, provided that the officer who conducted the sweep can articulate

specific facts to justify a reasonable fear for the safety of himself and others.

*Id.* at 1281-82 (quoting *Commonwealth v. Taylor*, 771 A.2d 1261, 1267 (Pa. 2001)).

Accordingly, upon executing the arrest warrant at Munford's residence, the police officers were automatically permitted to "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched[.]" *Id.* at 1281. The evidence reveals that the bedroom was not visible from the entryway where the arrest took place, but that it was down a short hallway from the living room. N.T., 9/28/12, at 7. As such, although the evidence reveals that this was a small apartment, we cannot conclude that the bedroom was **immediately adjoining** the place of arrest.

We conclude, however, that the evidence does support a finding that the officers had "articulat[able] specific facts to justify a reasonable fear for the safety of himself and others" so as to justify a protective sweep that exceeded the areas immediately adjacent to the location of the arrest. *Potts*, 73 A.3d at 1282. Officer Smith testified that violence is common when executing arrest warrants for felony drug charges and that a common concern is the presence and use of deadly weapons against the police when executing such arrest warrant. N.T., 9/28/12, at 5. Before knocking on the front door, the officers heard multiple people talking. *Id.* at 6. There was a

pause of fifteen to thirty seconds before Munford answered the door. *Id.* In consideration of the facts here, it is rational to infer that it would not take between fifteen and thirty second to answer the door and that the pause could have been the result of hiding items (or persons) that posed a risk to the officers' safety. Once inside the apartment, the officers observed two people sitting on a sofa in the living room. *Id.* A third person then emerged from the bathroom. *Id.* The emergence of a third person from a more remote part of the apartment, coupled with the pause before Munford opened the front door, provided an adequate basis for the officers to suspect that other people might be concealed in the residence. This permitted the police officers to check areas that might harbor other potential attackers further away from the arrest; i.e., Munford's bedroom. *Potts*, 73 A.3d at 1282; *see also Commonwealth v. Crouse*, 729 A.2d 588, 598 (holding that protective sweep of second floor of residence was permissible because in course of executing arrest warrant on first floor, police became aware that there were persons on the second floor hidden from view).

Thus, Officer Smith lawfully looked into Munford's bedroom, where he observed the marijuana roaches in plain view. Although the purpose of a protective sweep is to assure officer safety, police officers are not required to ignore contraband they encounter in the course thereof. *Potts*, 73 A.3d at 1282 ("If, while conducting a protective sweep, the officer should … discover contraband other than weapons, he clearly cannot be required to

ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances.").

On appeal, Munford argues primarily that the police were not entitled to enter Munford's residence because (1) they did not have a search warrant; (2) they did not have to search the residence for him because he answered the door; and (3) he did not attempt to flee from the police as they took him into custody. Munford's Brief at 12-13. These arguments ignore the existence and purpose of the protective sweep doctrine, which is an exception to the search warrant requirement and exists for the purpose of ensuring officer safety when arresting a suspect in his or her home. In other words, our focus is not on whether Munford submitted easily when the officers arrested him in his home, but what scope of protective sweep the officers were lawfully permitted to perform and whether they exceeded that scope.

As discussed above, the officers had articulable facts to believe that there was a concern for their safety, and therefore, the protective sweep was permissible. We find no error in the trial court's denial of Munford's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/2/2015