J.S07037/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| STEVEN JOSEPH ANDERSON, | : | |
| | : | |
| Appellant | : | No. 698 MDA 2015 |

Appeal from the Judgment of Sentence March 25, 2015
in the Court of Common Pleas of Berks County Criminal Division
at No(s): CP-06-CR-0002167-2014

BEFORE: BOWES, OTT, and FITZGERALD,* JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED FEBRUARY 11, 2016**

Appellant, Steven Joseph Anderson, appeals from the judgment of sentence following a bench trial and convictions for driving under the influence of alcohol ("DUI")[1] and driving a vehicle at an unsafe speed.[2] Appellant contends the police lacked probable cause to stop his vehicle. We affirm.

We set forth the findings of fact in the trial court's opinion:

> 1. On April 15, 2014, at approximately 1:59 a.m., Officer Peter P. O'Brien was on duty in a marked patrol vehicle and was merging onto the southbound SR222 from SR 183. As Officer O'Brien merged into the right lane, he was

---

* Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802.

[2] 75 Pa.C.S. § 3361.

passed by a Nissan Altima travelling in the passing lane travelling at a high rate of "speed."

2. Officer O'Brien was following the vehicle for about 1 mile traveling 80mph. The vehicle slowed down to 50mph for .4 miles then accelerated to approximately 75mph. Officer O'Brien initiated a vehicle stop. [The driver] was identified as [Appellant].

3. Upon making contact with the [Appellant], Officer O'Brien detected an odor of alcoholic beverage coming from inside the vehicle. Officer O'Brien informed [Appellant] of the violations committed and noticed [Appellant's] eyes to be bloodshot and glassy with dark puffy eyelids. Officer O'Brien asked [Appellant] if he had anything to drink. The Defendant responded and said "one drink".

4. Officer O'Brien asked [Appellant] to step out of the vehicle. [Appellant] was asked to submit to a series of standardized field sobriety tests (SFST). Officer O'Brien testified that he was certified to administer the SFST's on the date in question. He further testified that [Appellant] failed all three tests given. Officer O'Brien asked [Appellant] if he would submit to an Alco-Sensor test. [Appellant] agreed and the result was positive for alcohol consumption.

5. At the conclusion of said SFST's, [Appellant] was placed under arrest for suspicion of [DUI].

6. [Appellant] was transported to St. Joe's Medical Center. [Appellant] signed and consented for a sample of his blood to be tested. The BAC results were .125%[.]

Trial Ct.'s Findings of Fact, 10/7/14,[3] at 1.

Appellant was charged with the above crimes; the Commonwealth did not charge Appellant with violating 75 Pa.C.S. § 3362, driving in excess of

---

[3] The document was served on this date.

the maximum speed limit. Appellant filed a pretrial motion to suppress challenging, *inter alia*, whether the officer had probable cause to stop his vehicle.

At the suppression hearing, Officer O'Brien testified that the speed limit for that portion of Route 222 was fifty-five miles per hour. N.T. Suppression Hr'g, 9/5/14, at 5. With respect to the conditions of the road, the following testimony was heard:

> [Commonwealth]   I would like to briefly discuss Route 222 in detail in the area specifically.
>
> [Officer O'Brien]   Okay.
>
> Q Can you describe the shape of the road there?
>
> A Ah, that section is straight but downhill.
>
> Q Any curves?
>
> A Not immediately where I noticed [Appellant]. Further down the road there is.
>
> Q Are there any street lights in that area?
>
> A No.
>
> Q You said this was a two-lane road; is that correct?
>
> A Yes.[4]
>
> Q Specifically that night what were the road conditions like?

---

[4] Specifically, this was a four-lane highway with two southbound and two northbound lanes. N.T. Supression Hr'g at 10.

A There were no weather conditions.

Q So the road was dry?

A Right.

\* \* \*

Q And why did you decide to activate your emergency equipment?

A Because of the excessive speed I had observed.

*Id.* at 5-9.

On cross-examination, the following exchange transpired:

[Appellant's counsel]  Officer, you are familiar with the speeding -- to clock a car or to clock someone for speeding, give them a speeding ticket, you need to have either an approved device in your car or certified speedometer, correct?

A Yes.

Q You did not have a device in your car to clock this vehicle's speed, did you?

A No, I did not.

Q You did not have a certified speedometer to clock this vehicle's speed, correct?

A The speedometer in the vehicle is certified on the dash. They are not regularly calibrated.

Q You do not have any, you do not have any documentation with you showing that this was a certified speedometer and that someone had tested it within the --

A No, I do not have that.

\* \* \*

- 4 -

Q I know you have a form in your police report that gives you like boxes that you can check for your observations as to how the vehicle was driving in motion. And you got a whole bunch of options about weaving or straddling lane lines, swerving, and drifting. You got all those boxes on that preprinted form you could use, correct?

A Yes

Q You didn't check any of the boxes about swerving or drifting or crossing the line or straddling the line, correct?

A Correct.

Q Because you were following [Appellant]. He was maintaining his lane and driving his car, you know, where it was supposed to be, correct?

A Yes.

Q Dry roadway, correct?

A Yes.

Q No other cars on the road, correct?

A Yes.

*Id.* at 10, 13-14.

On redirect examination, the Commonwealth again asked the officer the basis for stopping Appellant:

[District attorney] You were asked about weaving or erratic driving. Was it your testimony you stopped this vehicle based only on speed; is that correct?

A Yes.

*Id.* at 14. Following the hearing, the court denied Appellant's motion on October 7, 2014.

After a February 25, 2015 bench trial, the court found Appellant guilty of the above charges.[5]  On March 25, 2015, the court sentenced Appellant to forty-eight hours to six months' imprisonment.  Appellant did not file a post-sentence motion but filed a timely appeal.  Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant raises the following issues:

> Did the trial court err by denying . . . Appellant's motion to suppress evidence obtained following a traffic stop without probable cause?
>
> Did the trial court err in denying the motion to suppress evidence where it applied an incorrect standard in determining the validity of the traffic stop?

Appellant's Brief at 4.

We summarize Appellant's arguments in support of both of his issues.  Appellant contends that the record failed to establish he was driving at an unsafe speed.  He notes the Commonwealth did not present any testimony regarding the condition of the road, his car was equipped with a headlight, and he could slow down prior to the highway's exit lane.  Appellant maintains the Commonwealth failed to present any evidence of an adverse condition.  In sum, he posits the Commonwealth failed to establish the officer had probable cause for the vehicle stop.  We hold Appellant is due no relief.

---

[5] We add that Appellant's bail paperwork reflects a pending DUI charge in Chester County.  Affidavit of Rights, 5/13/14, at 2.

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Where the prosecution prevailed in the suppression court, we may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*In re J.E.*, 937 A.2d 421, 425 (Pa. 2007) (citations omitted).

In Pennsylvania, the authority that addresses the requisite cause for a traffic stop is statutory and is found at 75 Pa.C.S.A. § 6308(b), which provides:

**(b) Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b). In ***Commonwealth v. Feczko***, 10 A.3d 1285 (Pa. Super. 2010) (*en banc*), this Court, consistent with our Supreme Court's clarification of constitutional principles under the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution, stated with respect to § 6308(b):

In light of our Supreme Court's interpretation of the current language of Section 6308(b), we are compelled to conclude that the standards concerning the quantum of cause necessary for an officer to stop a vehicle in this Commonwealth are settled; notwithstanding any prior diversity on the issue

- 7 -

among panels of this Court. Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose.

\* \* \*

Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, "it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, **which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code**."

*Id.* at 1290–1291. Accordingly, when considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop. Illustrative of these two standards are stops for speeding and DUI. **If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle.** This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway. On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance. With these guiding principles and examples in mind, we now turn to the examination of the Vehicle Code violation subject of this appeal.

*Commonwealth v. Salter*, 121 A.3d 987, 992-93 (Pa. Super. 2015)

(second emphasis added and parentheticals and some citations omitted).

> To determine whether probable cause exists, we must consider whether the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.

*Commonwealth v. Ibrahim*, ___ A.3d ___, 2015 WL 6777602 at *4 (Pa. Super. Nov. 6, 2015).

> We are mindful that probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference. . . . [W]hile an actual violation of the [Vehicle Code] need not ultimately be established to validate a vehicle stop, a police officer must have a reasonable and articulable belief that a vehicle or driver is in violation of the [Vehicle Code] in order to lawfully stop the vehicle.

*Commonwealth v. Spieler*, 887 A.2d 1271, 1275 (Pa. Super. 2005) (internal quotation marks and citations omitted); *see Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) (holding validity of detention is not dependent on whether defendant actually committed or was later acquitted of crime). "We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid" detention. *DeFillippo*, 443 U.S. at 36. Indeed, the United States Supreme Court held that an officer's reasonable mistake of law can give rise to reasonable suspicion justifying a vehicle stop. *Heien v. North Carolina*, 135 S. Ct. 530, 534 (2014); *id.* at 539 ("the mistake of law relates to the

antecedent question of whether it was reasonable for an officer to suspect that the defendant's conduct was illegal. If so, there was no violation of the Fourth Amendment in the first place.").

Instantly, the record reflects Officer O'Brien followed Appellant's vehicle for almost a mile at approximately eighty miles per hour according to the officer's uncertified speedometer. Trial Ct.'s Findings of Fact at 1; N.T. Suppression Hr'g at 10. The speed limit was fifty-five miles per hour. N.T. Suppression Hr'g at 5. The officer repeatedly testified he stopped Appellant because of speeding.[6] *Id.* at 9, 14. The record reflects that the officer, based on firsthand knowledge, articulated specific facts tending to establish, at the very least, a reasonable inference that Appellant was violating the Vehicle Code. *See Salter*, 121 A.3d at 992-93; *see also Ibrahim*, 2015 WL 6777602 at *4; *Spieler*, 887 A.2d at 1275. As the *Spieler* Court observed, whether Appellant actually violated the Vehicle Code is not a prerequisite for a legitimate vehicle stop. *See Spieler*, 887 A.2d at 1275. That the record may be **insufficient** to convict Appellant of violating Section 3361 (or Section 3362) of the Vehicle Code does not necessarily **invalidate** the vehicle stop.[7] *See Spieler*, 887 A.2d at 1275; *accord DeFillippo*, 443

---

[6] Presumably, the officer was relying on 75 Pa.C.S. § 3362, driving in excess of the maximum speed limit.

[7] Indeed, an officer's reasonable, mistaken belief that a defendant violated the law may justify the vehicle stop. *See Heien*, 135 S. Ct. at 534.

U.S. at 36. Thus, after careful consideration, we affirm the court below.

*See In re J.E.*, 937 A.2d at 425.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2016