J-A03018-26

2026 PA Super 136

| IN THE INTEREST OF: T.T.-S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.T.-S., MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2455 EDA 2025 |

Appeal from the Dispositional Order Entered August 28, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-JV-0000156-2025

BEFORE:   BOWES, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

CONCURRING OPINION BY BOWES, J.:                **FILED JUNE 26, 2026**

My esteemed colleagues vacate the dispositional order because they determine that, despite Appellant's deferred disposition and placement on interim probation in a separate case, the Juvenile Act did not authorize a probation officer to conduct a warrantless search.  I am not wholly convinced that the probation officer lacked such authorization.  However, due to the underdeveloped record, I cannot conclude that the Commonwealth established that he was so authorized.  Therefore, I am compelled to agree that we must vacate the dispositional order and reverse the order denying suppression.  Further, in light of the lack of jurisprudence discussing this area of the law, I write separately to more fully explain why such a result is necessary here.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The Majority aptly sets forth the factual background and relevant framework for considering Appellant's issues on appeal. I reiterate only the portions salient to my discussion. In February of 2024, Appellant was found to have committed an act that would constitute the crime of retail theft.[1] Instead of proceeding forthwith to a dispositional hearing, at the conclusion of which he would be adjudicated delinquent if the court determined further treatment or supervision was needed, Appellant sought to have that hearing deferred. The Commonwealth agreed to deferment and the court granted the request. As a result, Appellant was placed on interim probation under the supervision of Philadelphia's Juvenile Enforcement Team ("JET") pending his deferred dispositional hearing.

At this juncture, I take a slight detour to explain the structure of delinquency proceedings:

> An adjudication of delinquency requires the juvenile court to find that the juvenile: (1) has committed a delinquent act and (2) is in need of treatment, supervision, or rehabilitation. A determination that a child has committed a delinquent act does not, on its own, warrant an adjudication of delinquency. After determining that a juvenile has committed a delinquent act, the court shall then hear evidence as to whether the child is in need of treatment, supervision or rehabilitation, as established by a preponderance of the evidence, and make and file its findings thereon.

***Int. of C.B.***, 241 A.3d 677, 681–82 (Pa.Super. 2020) (cleaned up).

_____

[1] The petition originated in Montgomery County but was transferred to Philadelphia County.

By illustration, Appellant completed the first portion of the delinquency proceedings, *i.e.*, he attended an adjudicatory hearing and the court found that he committed the alleged acts. Pursuant to the Rules of Juvenile Court Procedure, the court then had two options: "After an adjudicatory hearing, if the court finds that the juvenile committed any delinquent act, the court shall proceed as provided in Rule 409 [for a dispositional hearing] or enter a consent decree pursuant to Rule 370." Pa.R.J.C.P. 408(C). The Comment elaborates that "[t]his rule is not meant to preclude the entry of a consent decree after a finding on an offense pursuant to paragraph (C). If a consent decree is ordered, the court does not proceed under Rule 409." ***Id*.**, *Comment*.

To prevent the unreasonable prolongation of delinquency proceedings, the Juvenile Act sets forth specific time limitations for the court to conduct either a dispositional hearing or suspend the proceedings through a consent decree. If a court elects to proceed to a dispositional hearing after an adjudicatory finding, it only "may continue the hearings under this section for a reasonable period, **within the time limitations imposed by this section**, to receive reports and other evidence bearing on the disposition or the need for treatment, supervision or rehabilitation." 42 Pa.C.S. § 6341(e) (emphasis added). Those time limitations are set forth thusly:

> **(b) Finding of delinquency.--**If the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent it shall enter such finding on the record and shall specify the particular offenses, including the grading and counts thereof which the child is found to have

- 3 -

committed.  **The court shall then proceed immediately or at a postponed hearing, which shall occur not later than 20 days after such finding if the child is in detention or not more than 60 days after such finding if the child is not in detention**, to hear evidence as to whether the child is in need of treatment, supervision or rehabilitation, as established by a preponderance of the evidence, and to make and file its findings thereon.  **This time limitation may only be extended pursuant to the agreement of the child and the attorney for the Commonwealth.**  The court's failure to comply with the time limitations stated in this section shall not be grounds for discharging the child or dismissing the proceeding.  In the absence of evidence to the contrary, evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision or rehabilitation. If the court finds that the child is not in need of treatment, supervision or rehabilitation it shall dismiss the proceeding, discharge the child from any detention or other restriction theretofore ordered and commence expungement proceedings in accordance with 18 Pa.C.S. § 9123 and the Pennsylvania Rules of Juvenile Court Procedure.

42 Pa.C.S. § 6341(b) (emphases added).  Thus, the Act contemplates a short postponement period for the purpose of preparing an investigative report regarding a juvenile's need for treatment, supervision, or rehabilitation.

Section 6340 governs consent decrees and provides as follows in pertinent part:

**(a) General rule.--**At any time after the filing of a petition and before the entry of an adjudication order, the court may, on motion of the district attorney or of counsel for the child, suspend the proceedings, and continue the child under supervision in his own home, under terms and conditions negotiated with the probation services and agreed to by all parties affected.  The order of the court continuing the child under supervision shall be known as a consent decree.

. . . .

- 4 -

**(c) Duration of decree.--**A consent decree shall remain in force for six months unless the child is discharged sooner by probation services with the approval of the court. Upon application of the probation services or other agency supervising the child, made before expiration of the six-month period, a consent decree may be extended by the court for an additional six months.

**(d) Reinstatement of petition.--**If prior to discharge by the probation services or expiration of the consent decree, a new petition is filed against the child, or the child otherwise fails to fulfill express terms and conditions of the decree, the petition under which the child was continued under supervision may, in the discretion of the district attorney following consultation with the probation services, be reinstated and the child held accountable as if the consent decree had never been entered.

**(e) Effect of decree.--**A child who is discharged by the probation services, or who completes a period of supervision without reinstatement of the original petition, shall not again be proceeded against in any court for the same offense alleged in the petition or an offense based upon the same conduct.

42 Pa.C.S. § 6340(a). In other words, a child may be placed on probation pursuant to a consent decree for a maximum of one year, during which time the delinquency proceedings are suspended and the juvenile attempts to demonstrate that discharge is proper.

As noted above, Appellant's dispositional hearing was postponed, as permitted by § 6341, not suspended. Critically, however, his hearing did not commence within sixty days of the adjudicatory hearing. Indeed, the dispositional hearing never occurred as it was subject to continuance after

continuance.[2]  Rather, eighteen months after the court made its findings, it discharged Appellant on the retail theft case due to charging errors in the delinquency petition.  **See** N.T. Hearing, 8/28/25, at 5.

Meanwhile, one year after the court placed Appellant on interim probation and postponed the dispositional hearing on the retail theft, the probation department averred that Appellant committed several violations of the terms of his interim probation, including missing drug screen appointments, residing somewhere other than his approved residence, failing to maintain regular communication with his probation officer, and testing positive for drugs multiple times.[3]  **See** Commonwealth Exhibit 4 (Probation

_____

[2] The certified record does not explain the reason for these continuances or why the court permitted so many.  According to the Commonwealth's statement of the case, the court continued to defer the dispositional hearing, purportedly at Appellant's request, on a near-monthly basis until the underlying search in February of 2025.  **See** Commonwealth's brief at 2.

[3] As previously observed, many details surrounding that case are unclear because the filings and notes of testimony from that case were not made part of this certified record.  These violations are alleged within the probation search report, but there is nothing in the record setting forth the actual terms of the interim probation or the circumstances surrounding its imposition.  The Commonwealth blames Appellant for this omission.  **See** Commonwealth's brief at 3.  However, it was the Commonwealth's burden at the suppression hearing to establish "by a preponderance of the evidence that the evidence was properly obtained." **Commonwealth v. Heidelberg**, 267 A.3d 492, 499 (Pa.Super. 2021) (*en banc*) (cleaned up).  Since the propriety of the search hinged upon Appellant's interim probation status from the retail theft case, it was the Commonwealth's responsibility to introduce any salient portions of that record into evidence through exhibits or testimony.  Despite this obligation, the Commonwealth neglected to offer any exhibits or call Appellant's probation officer to establish the parameters of the interim probation.

Search Report, 2/13/25, at 2 (pagination supplied)). Additionally, he was also observed on social media with firearms and making threats of violence in a rap video. *Id*. Based on the foregoing, a probation supervisor approved a request for a property search. During the ensuing search, a firearm was recovered from underneath a couch where Appellant had been sitting, and he was charged with possession of a firearm by a minor in the matter *sub judice*.

Appellant sought to suppress the firearm on several bases, including that § 6304(a.1) of the Juvenile Act did not confer authority upon the probation department to search him without a warrant while he was on interim probation. The court held a suppression hearing on July 23, 2025, at the conclusion of which the court denied the motion, found he had committed the alleged acts regarding possession of the firearm by a minor, adjudicated him delinquent, and remanded him to the custody of the Philadelphia Juvenile Justice Services Center. One month later, the court entered a dispositional order releasing him to probation. This appeal followed.

With that background in mind, I turn to my review of the suppression holding. In that regard, this Court has explained:

> Even though a probationer's privacy interest is limited, the probationer does not relinquish his Fourth Amendment right to be free from unreasonable searches. Rather, the probationer is still protected by the Fourth Amendment's requirement that searches be reasonable. . . . .
>
> Probation is aimed at rehabilitating and reintegrating a law breaker into society as a law-abiding citizen and is deemed a constructive alternative to imprisonment. Our Supreme Court has ruled that a probationer will have limited privacy rights but must

still be afforded the protections of the Constitutions of the United States and Pennsylvania. Allowing a probation officer to conduct a search of a probationer for no reason other than the person is on probation would take away the right of a probationer to be free from unreasonable searches. Therefore, an officer cannot search a child on probation **just because** he is on probation without articulating a reasonable suspicion that the child violated his probation or was involved in further wrongdoing.

*In re J.E.*, 907 A.2d 1114, 1121–22 (Pa.Super. 2006), *aff'd*, 937 A.2d 421 (Pa. 2007) (cleaned up, emphasis in original). As clarified by our High Court, "The plain language of the statute requires that prior to such a search, law enforcement must have reasonable suspicion to believe that the child possesses, or the property under the control of the juvenile contains, 'contraband or other evidence of violations of the conditions of probation.'" *In re J.E.*, 937 A.2d at 425 (quoting 42 Pa.C.S. § 6304(a.1)(4)(i)(A) and (ii)).

Relevantly, that language is set forth in the Juvenile Act as follows:

**(a.1) Authority to search.--**

(1) Probation officers may search the person and property of children:

(i) under their supervision as delinquent children or pursuant to a consent decree in accordance with this section;

(ii) taken into custody pursuant to subsection (a) and section 6324 (relating to taking into custody); and

(iii) detained pursuant to subsection (a) and section 6325 (relating to detention of child) or during the intake process pursuant to subsection (a) and section 6331 (relating to release from detention or commencement of proceedings) and in accordance with this section.

(2) Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or section 8 of Article I of the Constitution of Pennsylvania.

(3) No violation of this section shall constitute an independent ground for suppression of evidence in any proceeding.

(4)(i) A personal search of a child may be conducted by any probation officer:

> (A) If there is a reasonable suspicion to believe that the child possesses contraband or other evidence of violations of the conditions of supervision.

> (B) When a child is transported or taken into custody.

> (C) When a child enters or leaves a detention center, institution or other facility for alleged or adjudicated delinquent children.

(ii) A property search may be conducted by any probation officer if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the child contains contraband or other evidence of violations of the conditions of supervision.

(iii) Prior approval of a supervisor shall be obtained for a property search absent exigent circumstances or unless the search is being conducted by a supervisor. No prior approval shall be required for a personal search.

(iv) A written report of every property search conducted without prior approval shall be prepared by the probation officer who conducted the search and filed in the child's case record. The exigent circumstances shall be stated in the report.

(v) The child may be detained if he is present during a property search. If the child is not present during a property search, the probation officer in charge of the search shall make a reasonable effort to provide the child with notice of the search, including a list of the items seized, after the search is completed.

(vi) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with that case law, the following factors, where applicable, may be taken into account:

(A) The observations of officers.

(B) Information provided by others.

(C) The activities of the child.

(D) Information provided by the child.

(E) The experience of the probation officer with the child.

(F) The experience of probation officers in similar circumstances.

(G) The prior delinquent and supervisory history of the offender.

(H) The need to verify compliance with the conditions of supervision.

42 Pa.C.S. § 6304(a.1).  Insofar as my resolution of Appellant's challenge to the suppression holding requires me to interpret the Juvenile Act and the Rules of Juvenile Court Procedure, I do so with a *de novo* standard of review and plenary scope.  ***See Int. of R.E.L.***, 212 A.3d 59, 61 (Pa.Super. 2019) ("Statutory interpretation presents a question of law.  Thus, our standard of

review is *de novo* and the scope of our review is plenary. We apply the same standard to construction of the Rules of Juvenile Court Procedure." (cleaned up)).

Although there is scant caselaw concerning the interplay of the § 6304(a.1) subsections, it is plain that they must be read in tandem. ***See In re J.E.***, 907 A.2d at 1121–22 (discussing how "an officer cannot search a child on probation just because he is on probation without articulating a reasonable suspicion that the child violated his probation or was involved in further wrongdoing"). Subsection (a.1)(1)(i) provides that probation officers may conduct searches of the person or property of a child "under their supervision as delinquent children or pursuant to a consent decree **in accordance with this section**[.]" 42 Pa.C.S. § 6304(a.1)(1)(i) (emphasis added). In other words, the officers may conduct searches that comport with the other requirements of § 6304. Our High Court has clarified that § 6304(a.1)(3) must not be read in a vacuum, but rather in conjunction with § 6304(a.1)(2). ***See In re J.E.***, 937 A.2d at 427. In that vein, this Court detailed how § (a.1)(2) "acknowledges that protections afforded probationers under the Constitutions of the United States and Pennsylvania against unreasonable searches and seizures trumps this statute." ***In re J.E.***, 907 A.2d at 1121 (cleaned up). Additionally, § 6304(a.1)(4) sets forth the requisite procedures and levels of suspicion for the probation officers to actually be able to search those juveniles under their supervision by virtue of § (a.1)(1)(i). In sum, to conduct a warrantless probation search of a child

under supervision pursuant to § 6304(a.1)(1), the probation officer must have "reasonable suspicion that [the] probationer possesses evidence of contraband or other evidence of a probation violation." *In re J.E.*, 937 A.2d at 428.

Before reaching the question of whether the probation officer had reasonable suspicion to support the search, the operable question is whether Appellant could be subjected to that type of search by virtue of his interim probation. In other words, the pertinent query is whether his interim probation fell within the umbrella of those "under [probation's] supervision as delinquent children or pursuant to a consent decree [.]" 42 Pa.C.S. § 6304(a.1)(1)(i).

As noted above, there is a dearth of jurisprudence regarding this particular subsection. Nonetheless, the Juvenile Act defines "[d]elinquent child" as "[a] child ten years of age or older whom the court has found to have committed a delinquent act and is in need of treatment, supervision or rehabilitation." 42 Pa.C.S. § 6302. *See also Commonwealth v. M.W.*, 39 A.3d 958, 962 (Pa. 2012) (concluding "that a juvenile court must determine (1) that the juvenile committed the delinquent acts alleged; **and** (2) that the juvenile is in need of treatment, supervision, or rehabilitation, before it may enter an adjudication of delinquency" (emphasis in original)). Appellant was not a delinquent child at the time of the search because his dispositional hearing for the retail theft case had been deferred.

Falling outside the definition of a delinquent child, I consider whether his interim probation fell within the compass of supervision pursuant to a consent decree. Although not defined, consent decrees are governed by § 6340, which I detailed hereinabove. Our Supreme Court has explained that it "is analogous to the accelerated rehabilitative disposition program available to adults. [It] does not involve a finding of guilt; instead, the delinquency proceedings are suspended while the juvenile undergoes a period of probation supervision and, assuming successful completion, the petition is dismissed." *Commonwealth v. Hughes*, 865 A.2d 761, 795 (Pa. 2004) (cleaned up). A critical component of the consent decree is the suspension of the delinquency proceedings.

Here, the trial court concluded that Appellant's supervision was encompassed by § 6304(a.1)(1)(i) because "[i]nterim probation with deferred adjudication is equivalent to supervision under a consent decree, as it places the juvenile under court-ordered conditions without a formal delinquency finding." Trial Court Opinion, 10/22/25, at 6. The Majority disagrees, opining that because Appellant did not explicitly fit within either § 6304(a.1)(1)(i) category, he could not be subjected to a warrantless search. It elaborates:

> An order placing on probation a child found to have committed a delinquent act, pending an adjudicatory hearing, is not the equivalent of a consent decree. A juvenile consent decree suspends the proceedings and puts the child under probation supervision with the hope of rehabilitation so that an adjudication of delinquency can be avoided. In contrast, an interim probation order continues the dispositional hearing and enables the court to

maintain supervision of the child until it can hold a dispositional hearing.

Majority Opinion at 7-8 (citations omitted). Therefore, the Majority vacates the dispositional order, reverses the order denying suppression, and remands.

While I do not wholly agree with this analysis, based upon the underdeveloped record in this case, I am compelled to join my colleagues' disposition. First, an order placing a juvenile who has been found to have committed a delinquent act on probation **can** be a consent decree if it is imposed in accordance with § 6340 and the delinquency proceedings are suspended. Nothing prohibited the court from entering such a decree in this matter, but that is not what happened.[4]

At the time Appellant was subjected to a warrantless search, he was plainly under the supervision of probation by virtue of his interim probation. However, it is also true, as the Majority finds, that he did not neatly occupy either of the two delineated situations in § 6304(a.1)(1)(i). That is, he was

_____

[4] I note that the court expressed exasperation throughout the suppression hearing that if interim probation does not allow warrantless probation searches pursuant to § 6340, "then there should be no more interim probation[.]" N.T. Hearing, 7/23/25, at 71. With all due respect to the court at the front lines of juvenile justice, it appears that interim probation has been routinely misused if it has been employed to keep juveniles under court supervision and subject to warrantless searches for an entire year without either an adjudication of delinquency or the suspension of delinquency proceedings with the goal of discharge. If the court wants to keep children under that type of supervision after finding they have committed a delinquent act, it should proceed immediately to a disposition hearing, at the conclusion of which probation may be imposed if warranted, or suspend the proceedings and enter a consent decree if it is going to wait a year to enter a dispositional order. Juveniles are entitled to swift disposition of their delinquency proceedings.

not a delinquent child as defined by the Act because his disposition had been deferred. He also was not under supervision by virtue of a consent decree because the proceedings had not been suspended. While there may be merit to the trial court's contention that interim probation can, in certain circumstances, be akin to a consent decree, I cannot make such a comparison on the record before us. Despite the efforts of the Commonwealth in its brief and the trial court in its opinion to provide additional details surrounding Appellant's interim probation, those facts are simply not before this Court.[5]

Based on the foregoing, I am constrained to agree with the Majority that Appellant was not under probation's supervision as a delinquent child or pursuant to a consent decree, and therefore § 6304 could not be invoked to authorize the warrantless probation search of Appellant. Since the Juvenile Act did not otherwise permit a warrantless search in the circumstances present here, the search was infirm. Thus, I concur that the dispositional order must be vacated and the suppression order reversed. Consequently, I also do not reach Appellant's remaining issues as to whether the search was supported by the requisite reasonable suspicion, whether the probation officers were acting as agents of the police, or whether the court improperly admitted hearsay evidence during the adjudicatory hearing.

_____

[5] In the future, if the Commonwealth seeks to argue that a search was proper because a juvenile under interim probation falls within the umbrella of § 6304(a.1)(1)(i) supervision, it must develop the record at the suppression hearing to demonstrate how that kind of supervision is equivalent to that of a juvenile under supervision pursuant to a consent decree.